STATE of Wisconsin EX REL. Dannette H. LANK
and the Milwaukee Metropolitan Sewerage
District, a municipal body corporate,
Petitioners-Appellants,

v.

Louise RZENTKOWSKI, in her official capacity as
custodian of records for the City of Mequon,
Respondent.†

Court of Appeals

*No. 87–0718. Submitted on briefs August 26, 1987.—Decided
October 7, 1987.*

(Also reported in 416 N.W.2d 635.)

† Petition to review denied.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Michael J. McCabe* and *David S. Branch* of Milwaukee Metropolitan Sewerage District.

On behalf of the respondent the cause was submitted on the brief of *Truman Q. McNulty, Thomas E. Griggs* and *Daniel M. Leep* of *Mulcahy & Wherry, S.C.,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   The issue in this case is whether the Milwaukee Metropolitan Sewerage District (MMSD) is entitled to certain public records in the custody of Louise Rzentkowski, the city clerk for the City of Mequon (Mequon), pursuant to Wisconsin's Public Records Law, sec. 19.31 *et seq.,* Stats. Because these records pertained to certain other pending litigation in Waukesha county involving MMSD and

certain municipalities, including Mequon,[1] and because the discovery cutoff deadline in that action had expired before the demand for the records was made in this case, the circuit court dismissed MMSD's mandamus action seeking to compel production of the records. We conclude that the public records law entitles MMSD to the materials requested. Therefore, we reverse the judgment of the circuit court and remand with directions to issue the writ of mandamus against the city clerk.[2]

MMSD is a quasi-municipal corporation which provides sewerage treatment and disposal services to approximately twenty-eight Milwaukee area municipalities. MMSD is currently engaged in a fifteen-year water pollution abatement program designed to upgrade and rehabilitate the district's sewerage system. In an effort to recover the capital cost for the project, MMSD sought to levy property value-based capital charges against Mequon and the other municipalities which MMSD services outside Milwaukee county.

---

[1]The Waukesha county action, Case No. 83–CV–296, is entitled:

City of Brookfield, Village of Butler, Village of Menomonee Falls, City of Mequon, City of New Berlin, Village of Elm Grove, City of Muskego, Village of Germantown, Village of Thiensville, Richard E. Enssling, Donald Wenzel and Raymond Gray v. Milwaukee Metropolitan Sewerage District.

[2]We have examined the record to determine whether remand in this case should be for purposes of further proceedings rather than for issuance of the writ. Although the pleadings arguably draw some collateral issues, an examination of the proceedings at trial reveals that the only issue placed before the circuit court was that which forms the basis for this appeal. No other issues remain to be tried between the parties. Therefore, we conclude that a remand with directions to issue the writ is appropriate.

In late 1979, the Mequon common council created a Blue Ribbon Commission to study and evaluate the impact of MMSD's proposed program on the city. The commission collected and evaluated data and met with representatives of the district concerning the cost impact of the program upon the city and its citizens. The minutes and other documents used or created by this commission are the subject of this mandamus action by MMSD.

In February 1983, Mequon and its sister municipalities commenced the Waukesha county action challenging MMSD's proposed capital cost recovery procedures.[3] The scheduling order in that action provided a discovery cutoff date of May 31, 1986. Eight months after this deadline, MMSD wrote a letter to Mequon seeking production of the minutes and other documents created or used by the commission. The request was made "[p]ursuant to the State Open Records Acts, 19.31 et seq. . . . ." This request came less than three months before the then scheduled trial date in the Waukesha county action.

After consultation with its counsel, Mequon inquired of MMSD whether the request was related to the Waukesha county litigation. MMSD did not directly respond to this inquiry. Mequon then formally denied the request, citing the pending litigation between the parties. MMSD responded with this manda-

---

[3]The municipalities are challenging MMSD's attempt to obtain and exercise authority to levy charges against them by one of two mutually exclusive means: (1) expanding MMSD's boundaries to include the municipalities and levy property taxes directly; or (2) if the municipalities remain outside MMSD's boundaries, assessing capital charges against the municipalities based on their respective property valuations rather than on a volumetric basis.

mus action seeking to compel the production of the commission's records.

The trial court, in dismissing MMSD's mandamus action, concluded that ordering the production of the records after the expiration of discovery deadlines would constitute an impermissible "end run" around the scheduling order in the Waukesha county action. The court concluded that "the orderly administration of justice and the processing of cases would be severely hampered." The court also expressed concern that:

> "the principal lawsuit would be bogged down by reason of claims that it could not go forward until collateral matters were litigated in other courts and the supervising court over the principal lawsuit would lose all control over what action the parties were taking to obtain information from one another."

■

A writ of mandamus is a discretionary writ in that it lies within the sound discretion of the trial court to either grant or deny. *Miller v. Smith,* 100 Wis. 2d 609, 621, 302 N.W.2d 468, 474 (1981); *State ex rel. North v. Goetz,* 116 Wis. 2d 239, 243, 342 N.W.2d 747, 749 (Ct. App. 1983). An abuse of discretion occurs when the discretionary determination is premised upon an erroneous view of the law. *North* at 245, 342 N.W.2d at 750.

■

The issue in this case is whether the trial court correctly concluded that the public records law did not apply to this fact situation, thus rendering correct its exercise of discretion that the writ of mandamus should not issue. Whether a statute applies to a given set of facts presents a question of law. *State v.*

*Kennedy,* 134 Wis. 2d 308, 319, 396 N.W.2d 765, 769 (Ct. App. 1986). Such questions are decided independently without deference to the trial court's decision. *Id.*

■

A cardinal rule of statutory construction or application is that an interpretation that effects the purpose of an act is favored over one that defeats the act's manifest object. *Harbick v. Marinette County,* 138 Wis. 2d 172, 175–76, 405 N.W.2d 724, 726 (Ct. App. 1987). The legislature has expressly declared the policy underlying the public records law:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information.

Sec. 19.31, Stats.

■

We begin our analysis by recognizing, as did the trial court, a number of principles which apply in a public records case: a presumption exists that the public has a right to inspect public records, *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 426, 279 N.W.2d 179, 183–84 (1979); *Oshkosh Northwestern Co. v. Oshkosh Library Bd.,* 125 Wis. 2d 480, 482, 373 N.W.2d 459, 461 (Ct. App. 1985), the denial of public access is

contrary to the public interest and is allowed only in an exceptional case, *Hathaway v. Joint School District No. 1,* 116 Wis. 2d 388, 396, 342 N.W.2d 682, 686 (1984); *Oshkosh Northwestern* at 482, 373 N.W.2d at 461, and exceptions to the general rule of disclosure must be narrowly construed, *Hathaway* at 397, 342 N.W.2d at 687.

Mequon contends that language of sec. 19.35(1)(j), Stats., constitutes an exception to the requirement of disclosure. This section provides:

> Notwithstanding pars. (a) to (f), a requester shall comply with any regulations or restrictions upon access to or use of information *which are specifically prescribed by law.* [Emphasis added.]

Mequon also contends that because sec. 19.35(1)(a) through (f) each contain the introductory language "[e]xcept as otherwise provided by law," a legislative exception to the general requirement of disclosure is provided.

However, the discovery statutes, ch. 804, Stats., nowhere *specifically* deal with public records. The fact that the discovery statutes *could* be utilized to obtain public records does not alter this fact. As such, the rule of statutory construction that the specific statute will control over the general, *Liles v. Employers Mut. Ins.,* 126 Wis. 2d 492, 504, 377 N.W.2d 214, 220 (Ct. App. 1985), leads us to conclude that the legislature has not carved out an exception to the requirement of disclosure when the public records sought are germane to pending litigation between the requester and the public entity. We so conclude particularly bearing in mind the admonishment of our supreme court that exceptions to the general rule of disclosure are to be

narrowly construed and allowed only in exceptional cases. *Hathaway,* 116 Wis. 2d at 396–97, 342 N.W.2d at 686–87.

A measure of practicality also enters into our consideration of this issue. Mequon would exempt private and citizen litigants from the right to disclosure of public records if the materials sought potentially relate to a matter under litigation between the parties. But circumvention of the statute under such an interpretation could be accomplished with ease and impunity. Nothing in Mequon's argument would preclude a person, not a party to the underlying litigation, from rightfully demanding the materials and then turning them over to the litigants who otherwise would be denied them. The interpretation urged by Mequon would encourage surreptitious circumventing of the statute. We are hesitant to adopt an interpretation which reduces a law to such unenforceable stature and holds it out to ridicule rather than respect.

In light of this conclusion, we address the concerns voiced by the trial court concerning the effect of permitting discovery upon the trial of the underlying action—in this case the Waukesha county action. While the trial court properly addressed these matters, we think its concerns are somewhat overstated.

Parties to litigation routinely obtain material and information relevant to the proceeding by methods beyond the discovery process. The fact that such information is obtained by a nondiscovery process does not mean the party is not entitled to it. Indeed, in most instances, the opposing party would not even be in a position to prevent it. The only reason this issue surfaces in this case is because the source of the information sought happens also to be a party in the

underlying action in Waukesha county. This does not, however, operate to make the method by which MMSD seeks to obtain these public records under ch. 19, Stats., the equivalent of discovery under ch. 804, Stats., and therefore subject to the discovery deadlines.

It is critical to note that nothing in our holding here directly affects the scheduling order in the Waukesha county action nor the right of the trial court in that matter to enforce it. While the ability to obtain these materials could conceivably prompt a request by MMSD to seek some modification of the scheduling order, such a matter is properly left to the trial court in that action and the resolve with which that trial court chooses to enforce its scheduling order. The fact remains, for purposes of this action, that while MMSD's public records request is certainly prompted by a desire to obtain information possibly relevant to the Waukesha county action, it is not formal discovery within the meaning of ch. 804, Stats.

Our conclusion, we acknowledge, brings us into conflict with an Attorney General's opinion which the trial court cited in support of its holding, 74 Op. Att'y Gen. 1 (1985).[4] While such opinions are helpful in resolving legal issues, we note that they stand only as persuasive authority as to the meaning and purposes of statutes. *See State v. Wachsmuth,* 73 Wis. 2d 318,

---

[4]Although we disagree with the trial court's conclusion, we do not accept MMSD's argument that the court improperly relied upon the Attorney General's opinion. We do not see the court's decision as relying upon the opinion in the sense of being bound by it. In fact, the court's decision correctly acknowledges that such opinions are merely persuasive in certain instances. Rather, we read the court's decision as stating that it found itself in agreement with the analysis of the issue by the Attorney General.

323, 243 N.W.2d 410, 413 (1976); *North,* 116 Wis. 2d at 244, 342 N.W.2d at 750.

Here, we respectfully disagree with the Attorney General's opinion. We do so not only on the basis of our reasoning already recited, but also upon a flaw in the opinion itself. The Attorney General correctly notes the general rule that "[a]n exception to the general right of access to public records must be established specifically by statute or common law limitation." 74 Op. Att'y Gen. at 2. The opinion goes on to cite various examples of such specific exceptions but then observes, "I am not aware of any specific statute or common law limitation which generally exempts records from the public records law because they relate to pending litigation and are subject to civil discovery." *Id.* Yet, even in the absence of such specificity concerning public records, the opinion concludes that such records are subject to discovery rules. We reject this reasoning of the Attorney General and conclude that it is of no persuasive effect in this case.[5]

Finally, Mequon argues that MMSD's mandamus action was properly rejected by the trial court because

[5]We also disagree that the United States Supreme Court interpretations of the Freedom of Information Act (FOIA) control this question. We acknowledge that the Wisconsin appellate courts have looked to federal court decisions interpreting the FOIA as "persuasive authority" for interpreting Wisconsin's open records law. *See Racine Educ. Ass'n v. Board of Educ.,* 129 Wis. 2d 319, 326, 385 N.W.2d 510, 512 (Ct. App. 1986). However, the claim that *United States v. Weber Aircraft Corp.,* 465 U.S. 792 (1984), controls the issue here is wrong. *Weber* held that certain material could not be discovered because *privileged,* therefore falling within an express exemption of the FOIA. Mequon's expansive reading of *Weber* is not warranted.

MMSD had another adequate remedy at law. *See State ex rel. Morgan v. Risjord,* 177 Wis. 290, 293, 188 N.W. 495, 496 (1922). Mequon reasons that MMSD could have sought leave of the trial court in the Waukesha county action to conduct discovery into the requested records. However, Mequon never claimed in the trial court that some other adequate legal remedy was available to MMSD in order to obtain these records. Such a failure operates as a waiver in a mandamus action. *Law Enforcement Standards Bd. v. Village of Lyndon Station,* 101 Wis. 2d 472, 496, 305 N.W.2d 89, 101 (1981).

Alternatively, we question whether the remedy at law suggested by Mequon satisfies the requirements of mandamus law. Such a remedy must not only be adequate, but also must be plain and complete. *State ex rel. Thomas v. State,* 55 Wis. 2d 343, 349, 198 N.W.2d 675, 678–79 (1972). We have previously noted that the judge assigned to the Waukesha county action is entitled to enforce the scheduling order in that action with resolve. The court in that action could be well within its discretionary rights in denying an application by MMSD for relief from the discovery order. In the face of sec. 19.37(1), Stats., which *expressly* provides mandamus as the remedy for a failure to deliver up a public record for inspection, we conclude that the alternative remedy suggested by Mequon is neither plain, adequate or complete within the meaning of *Thomas.*

*By the Court.*—Order reversed and cause remanded with directions.