IN RE the MARRIAGE OF: Michelle SCHINNER,
Petitioner-Appellant,

v.

Paul E. SCHINNER, Respondent.

Court of Appeals

*No. 87–0472. Submitted on briefs November 9, 1987.—Decided
January 13, 1988.*

(Also reported in 420 N.W.2d 381.)

On behalf of the petitioner-appellant the cause was submitted on the briefs of *Kathleen Ortman Miller & Associates,* of Milwaukee.

On behalf of the respondent the cause was submitted on the brief of *Law Offices of George N. Kotsonis,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Michelle Schinner appeals from the property division and maintenance/support provisions of a divorce judgment entered in an action against her husband, Paul. Upon appeal, Michelle argues that the trial court erred in failing to include certain pretrial and post-trial earnings on Paul's retirement account which was awarded to Michelle through the use of a qualified domestic relations order (QDRO).[1] We disagree and conclude that the division of the pension fund was not a misuse of discretion. We affirm this portion of the judgment.

Michelle also argues that the trial court made certain mathematical errors. We agree and direct the modification of the judgment accordingly. Michelle also contends that the judgment is inconsistent in certain respects with the decision of the court, the state of the record, and agreements between the parties. We also agree with certain of these arguments and likewise direct that the judgment be modified accordingly.

Finally, Michelle argues that the trial court erred by failing to consider Paul's bonuses as an income stream for purposes of computing maintenance and support. We agree and reverse the maintenance and

---

[1]A qualified domestic relations order permits payment of benefits of qualified private retirement plans to one other than the employee spouse. Such a recipient is denominated an "alternate payee," which includes a nonemployee spouse. *See* 26 U.S.C. sec. 414(p)(1)(A); *see also Lindsey v. Lindsey,* 140 Wis. 2d 684, 689, 412 N.W.2d 132, 134–35 (Ct. App. 1987).

support provisions of the judgment. We remand for a redetermination of these two matters.

## FACTS

Paul and Michelle were married on November 13, 1970, when Paul was nineteen and Michelle was seventeen. Michelle worked fulltime for the first three years of the marriage until the birth of the parties' first child. Thereafter, Michelle worked only parttime until the birth of the parties' second child. She then worked as a fulltime homemaker for the duration of the marriage. After this action was commenced, she again took up parttime work.

Paul worked as a grocery stockboy when the parties were first married. Two years later he began working for his father's company, R. J. Schinner Company, working his way up from warehouse laborer to his present position as a successful salesman for the company.

Paul was paid a base salary. However, he also received regular bonus payments which oftentimes exceeded his base salary. Paul and Michelle were accustomed to a very comfortable lifestyle during their marriage and at the time they separated.

The judgment awarded custody of the two minor children to Michelle. Child support was fixed at $1000 per month. Maintenance in the amount of $500 per month for a period of forty-eight months was awarded to Michelle. A fifty-fifty division of the marital estate was ordered. Additional facts will be recited as the discussion of the issues requires.

## WAIVER

Paul initially responds by arguing that Michelle has waived her right to raise certain issues on this

appeal because she has already accepted the initial property division installment payment of $40,000 and because she did not bring a motion asking the trial court to amend its findings or to make additional findings pursuant to sec. 805.17(3), Stats.

■

Where the purpose of an appeal is to seek a more favorable award, the acceptance or use of that property actually awarded is not a waiver of the right to appeal. *See Anderson v. Anderson,* 72 Wis. 2d 631, 638, 242 N.W.2d 165, 169 (1976). Michelle seeks a more favorable award upon appeal than that which she received in the trial court. Therefore she has not waived her right to raise this property division issue by virtue of her acceptance of a portion of the property division award.

Paul also argues that sec. 805.17(3), Stats., bars Michelle's claim. Section 805.17(3) provides:

> AMENDMENT. Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial.

Subsection (4) of the same statute provides:

> APPEAL. In actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings or moved for new trial.

■

Paul reasons that the language of subsec. (4), providing that a post-judgment motion seeking a new

trial is not necessary when the issue on appeal is the sufficiency of the evidence, mandates an inference that all other issues must be renewed by a post-judgment motion under subsec. (3). Michelle contends that nothing in the statute (or any case law) expressly requires such a post-trial procedure. We conclude that reasonable persons could differ on this question under the language of the statute. Therefore, the statute is ambiguous. *See In re D.M.M.,* 137 Wis. 2d 375, 384, 404 N.W.2d 530, 534 (1987). Accordingly, we must proceed to construe the statute. This presents a question of law. *In re K.S.,* 137 Wis. 2d 570, 574, 405 N.W.2d 78, 80 (1987).

█

If the language of the statute is ambiguous, we examine the scope, history, context, subject matter and object of the statute to discern the legislative intent. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987).

The genesis of sec. 805.17(3) and (4), Stats., is Rule 52(b) of the Federal Rules of Civil Procedure which provides:

> Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.

-

Fed. R. Civ. P. 52(b).

With only minor variations, sec. 805.17(3) and (4), Stats., is a restatement of this federal rule. This statute was part of the Wisconsin Rules of Civil Procedure adopted by the Wisconsin Supreme Court on February 17, 1975. Sup. Ct. Order, 67 Wis. 2d 585 (1975) (eff. Jan. 1, 1976). The Judicial Council Committee's Note to what is now subsec. (4) of the statute observes:

> Since judges are able to deliberate, with the aid of briefs prepared by counsel, before making findings, the findings should reflect the considered judgment of the court. That is to say, findings, unlike many rulings during trial, are not "shoot from the hip" affairs. Thus, in trials to the court, almost all motions for new trial based on alleged insufficiency of the evidence are denied. *Since such motions become mere formalities, they are not required under the new code.* However, there is nothing in this code to prevent a party from moving for a new trial after a trial to the court if such a motion seems appropriate.

Judicial Council Committee's Note—1974, Wis. Stat. Ann. sec. 805.17 (West 1977) (emphasis added, citation omitted).[2]

It is clear from this committee note that the supreme court, by enacting sec. 805.17(4), Stats., was

[2]Earlier editions of the Wisconsin Statutes carried an annotation to this statute indicating that this Judicial Council Committee Note pertained to subsec. (3) of sec. 805.17, Stats. *Cf.* Judicial Council Committee's Note—1974, sec. 805.17, Stats. (1981–82). This annotation is incorrect because the subsections were renumbered in 1976. *See* Historical Note, Wis. Stat. Ann. sec. 805.17 (West 1977). The committee note pertains to subsec. (4) of the statute.

eliminating the need for a post-trial motion challenging the sufficiency of the evidence following a bench trial as a prerequisite to an appeal. It remains to be answered, however, as to what the supreme court intended by its enactment of sec. 805.17(3). More specifically, we must determine what type of challenge to the factual findings of the trial court subsec. (3) contemplates and what is the effect, upon appeal, of a failure to follow this statute.

We first observe that we must read the two subsections *in pari materia*. *See County of Dane v. Racine County,* 118 Wis. 2d 494, 498, 347 N.W.2d 622, 625 (Ct. App. 1984). When so reading multiple statutes, we are obliged to interpret such that all statutes under consideration will be operative. *See Maxey v. Redevelopment Auth.,* 120 Wis. 2d 13, 24, 353 N.W.2d 812, 818 (Ct. App. 1984). Obviously, this is all the more true when the language under consideration is in subsections of the same statute.

Although we are not bound by the federal courts' interpretations of state law, *Lindsey v. Lindsey,* 140 Wis. 2d 684, 693, 412 N.W.2d 132, 136 (Ct. App. 1987), we are free to look to the federal courts for interpretive assistance when the state law is modeled after a federal statute. *See State ex rel. Lank v. Rzentkowski,* 141 Wis. 2d 846, 856 n. 5, 416 N.W.2d 635, 638 (Ct. App. 1987). Such is the case here.

The federal courts have held that failure to bring a motion for amendment or expansion of the findings under Rule 52(b) of the Federal Rules of Civil Procedure does not operate to bar a litigant from arguing the sufficiency of the evidence upon appeal where the

evidence is shown to be in conflict.[3] *See Gilbert v. Sterrett,* 509 F.2d 1389, 1393 (5th Cir.), *cert. denied,* 423 U.S. 951 (1975); *Evans v. Suntreat Growers & Shippers, Inc.,* 531 F.2d 568, 570–71 (Temp. Emer. Ct. App. 1976). This theme is echoed in the Judicial Council Committee's Note to sec. 805.17(4), Stats., noted earlier.

As to matters not concerning the sufficiency of the evidence, however, the federal courts have held that the primary purpose of Rule 52(b) is to enable an appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon. *Clark v. Nix,* 578 F. Supp. 1515, 1516 (S.D. Iowa 1984); 9 C. Wright & A. Miller, *Federal Practice & Procedure* sec. 2582, at 722 (1971). Therefore, a motion to amend or expand the findings has been treated as one which addresses "manifest" errors by the trial court. *Evans, Inc. v. Tiffany & Co.,* 416 F. Supp. 224, 244 (N.D. Ill. 1976); *Clark,* 578 F. Supp. at 1516.

■

We cannot define for all cases precisely what type of trial court error falls within the concept of "manifest error" pursuant to sec. 805.17(3), Stats. However, we are able to state that "manifest error" contemplates that self-evident kind of error which results from ordinary human failings due to oversight, omission, or miscalculation. It is the type of error which tends to immediately reveal itself as such to reasonable legal

---

[3]Rather, the effect of a failure to bring such a motion is a waiver of the right to complain about any lack of specificity in the findings. *Evans v. Suntreat Growers & Shippers, Inc.,* 531 F.2d 568, 570 (Temp. Emer. Ct. App. 1976).

minds. It does not, and should not, embrace those kinds of alleged errors which lend themselves to legitimate legal debate and difference of opinion viewed from the standpoint of reasonable advocacy.

Appeals in family cases regularly bring before us these kinds of manifest errors. In part, this case is no exception. Among Michelle's claims is that the trial court committed certain mathematical or accounting errors in computing the property division. In addition, Michelle claims that the judgment is incomplete or inconsistent with the court's decision. Common sense and practical economic considerations of time, effort and money dictate that such "mechanical" adjustments, if warranted, to the findings and judgment should first be allowed to occur at the trial court level. In most cases, this should eliminate the expense and delay of an appeal as to such issues. It also will eliminate trial court proceedings after remand to correct rudimentary error which the trial court should have earlier addressed. Failure to bring a motion to correct such manifest errors properly constitutes a waiver of the right to have such an issue considered on appeal.[4]

Application of this rule also serves principles of statutory construction. We have already noted that reading subsecs. (3) and (4) of sec. 805.17, Stats., *in pari materia* requires us to make each subsection

---

[4]A motion under sec. 805.17(3), Stats., to amend the findings or to make additional findings and amend the judgment must be made "not later than 10 days after entry of judgment." Failure to do so deprives the movant of the *right* for relief under this statute. We are not confronted here with the question of whether the trial court may, in its discretion, grant equivalent relief by way of a motion for reconsideration or pursuant to sec. 806.07, Stats.

operative. Our holding accomplishes this end. Were it otherwise, we would see subsec. (3) standing as a meaningless statute. Such interpretations are to be avoided. *Liles v. Employers Mut. Ins.,* 126 Wis. 2d 492, 503, 377 N.W.2d 214, 220 (Ct. App. 1985).

We choose, however, not to employ this waiver rule against Michelle in this case. No Wisconsin appellate court has previously interpreted sec. 805.17(3), Stats., as a waiver statute. Nor, to our knowledge, has the trial bar or bench ever viewed the statute to operate as an appellate bar. Furthermore, we have not observed that this statute is regularly used by the bar and bench in family cases. Noting that waiver is a rule of judicial administration which an appellate court may, in its discretion, choose not to apply, *see Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 417, 405 N.W.2d 354, 362 (Ct. App. 1987), we conclude that application of the new waiver principle announced in this case would be inappropriate and unfair.[5]

---

[5]We stress that our holding in this case is limited to the effect of sec. 805.17(3), Stats. It does not affect the traditional rule that an issue must be raised in the trial court to be eligible for review upon appeal. *See Zeller v. Northrup King Co.,* 125 Wis. 2d 31, 35, 370 N.W.2d 809, 812 (Ct. App. 1985). We could invoke this rule against Michelle to the extent of her argument that earnings accruing to the pension fund beyond the date of the entry of the divorce judgment to the date of distribution should have been awarded to her. This claim was never asserted by Michelle below. Her letter of September 19, 1986, in which she expresses her reservations regarding the proposed QDRO, lays claim to earnings on the pension fund only to the date of the entry of judgment—not to the date of distribution. We choose nonetheless to address this issue for the full period asserted by Michelle upon appeal. We do so noting that the time period between the two payout periods—

## PROPERTY DIVISION

### A. The Pension Fund

At the close of the evidence on February 11, 1986, the court granted a divorce to Michelle but reserved a decision and judgment on all other issues.[6] Paul's interest in the R. J. Schinner Company pension fund was valued at $195,688. This valuation was as of April 1, 1985, the latest available valuation date as of the time of trial.

Following the close of the evidence, the trial court set a briefing schedule on the issues. In the interim, the R. J. Schinner Company informed the court that it would honor a QDRO awarding some or all of Paul's interest in the pension fund to Michelle. Michelle, however, registered concerns about the tax consequences of the proposed QDRO, and whether the pension award would be reduced by an amount Paul had previously borrowed against the plan. In addition, Michelle asserted that the amount actually payable to her should be the amount which the employee spouse (Paul) would normally be entitled to as of the date of entry of judgment. Paul disagreed, contending that the valuation as of the date of the divorce controlled.

Faced with these additional concerns and disputes, the trial court, with the consent of the parties, retained its own tax expert who filed a report as to the

---

December 1986 and January 31, 1987—is *de minimis*. We again note that waiver is a rule of judicial administration which we may, in our discretion, choose not to apply. *See Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 417, 405 N.W.2d 354, 362 (Ct. App. 1987).

[6]Trial proceedings were conducted on January 22, January 30, and February 11, 1986.

tax consequences of the various proposals paying the pension fund over to Michelle.

In its decision filed October 24, 1986, the trial court determined that a fifty-fifty division of the marital assets was warranted. To implement this division, the court awarded Paul's interest in the pension fund to Michelle. The payout was accomplished through a QDRO. The value of the plan ($195,688) was discounted to $122,394 after consideration of the income tax consequences. These valuations are not at issue on this appeal.

The trial court directed that the payout to Michelle be accomplished in two installments: an initial payment of $40,000 in 1986 and the balance no later than January 31, 1987.

Michelle appeals, arguing that the trial court erred in failing to award her both the pretrial and posttrial earnings of the fund from the date of the valuation certificate, December 15, 1985, to the date of final distribution, January 31, 1987.[7] She reasons that the court has, in effect, subtracted from the assets awarded to her and awarded them to Paul in a manner which does not appear in the court's calculations. Thus, Michelle contends that the trial court's expressed intent to achieve a fifty-fifty property division was not actually accomplished.

---

[7]Michelle's claim to the pension fund (and that awarded by the trial court) was limited to the opening balance shown on the valuation certificate plus the balance on a loan previously taken out against the plan by Paul. These amounts represent the valuation figure used by the trial court ($195,688). Michelle did not assert any claim to the company's contribution to the plan or any earnings related to this portion of the plan for the period of time after the date of the valuation certificate to the date of the divorce.

■ We first observe that a property division determination rests within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. *Wallen v. Wallen,* 139 Wis. 2d 217, 229, 407 N.W.2d 293, 297 (Ct. App. 1987).

We see no basis for Michelle's claim under the facts and procedural history of this case. Michelle herself submitted the evidence at trial contending that the value of Paul's pension fund was $195,688.50. This value was not in dispute at trial. It was this amount which Michelle requested be awarded to her by use of a QDRO in her posttrial brief.[8] The court adopted this value, adjusted it for income tax considerations, and then awarded it to Michelle pursuant to her request.

The trial court's only variation from Michelle's proposal was to order the payout on two installment dates which were separated by a period of approximately ninety days from the date of the court's decision, but which managed to span two taxable years. The result was a substantial tax savings to Michelle, assuming the payouts were to be considered as ordinary income.[9]

---

[8]While Michelle's proposed QDRO did recite that the payout should be calculated as of the date of the entry of judgment, the amount Michelle urged the court to award her remained consistent throughout the proceedings—the value established at trial, $195,688.50.

[9]In her reply brief, Michelle criticizes the trial court's efforts to minimize the tax consequences of the payout. She argues that the court's ruling actually cost her tax dollars because it precluded her from "rolling over" any of the payout into an IRA. This is based upon the testimony of Michelle's expert witness who stated that such a rollover could occur only if the payout is made in one

Therefore, we conclude that the trial court's division of Paul's retirement account to the date of the divorce was in accord with the evidence which established the fund's value as of that time.

In addition, we note that generally the assets of a marriage are to be valued and divided as of the date of the divorce. *See Bussewitz v. Bussewitz,* 75 Wis. 2d 78, 82, 248 N.W.2d 417, 420 (1977). Special circumstances can warrant deviation from this rule. *See Roeder v. Roeder,* 103 Wis. 2d 411, 418, 308 N.W.2d 904, 908 (Ct. App. 1981). Michelle points to no special circumstances in this case which, in our judgment, would warrant application of this exception to the general rule governing the valuation and division of marital assets. On this added ground, we also conclude that the trial court's determination that the postdivorce earnings of the pension fund should be awarded to Paul was not an abuse of discretion.

We reject Michelle's attempt to liken this case to *Overson v. Overson,* 125 Wis. 2d 13, 16–17, 370 N.W.2d 796, 798 (Ct. App. 1985), where we required the payment of interest on a property division award paid

taxable year. However, Michelle noted in her post-trial brief that as much as $50,000 to $100,000 of the pension payout would not be rolled over and instead would be applied to the purchase of a home. As such, this amount would be treated as ordinary income. Moreover, Michelle never provided the trial court with any *specific* income tax liability figures resulting from her possible investment of the pension payout. Pitted against the precise "to the dollar" figures which the court's own tax expert had provided, the court's decision to adopt the recommendations of its expert was eminently reasonable.

by installments over a period of years unless the trial court sufficiently explains otherwise. The property division in this case was scheduled for a total payout within forty-three days of the entry of judgment. A property division which is accomplished in such a short time span does not warrant invoking the rule of the *Overson* line of cases. Even if *Overson* would apply, we conclude that the tax savings accomplished by the trial court's methodology constitutes a sufficient reason not to award interest for the brief period involved.

We address one final issue in this portion of the opinion, although Michelle raises it as a challenge to the trial court's support order. The court ordered Paul to pay $48,000 to the pension fund, representing repayment for a loan he had taken out against the fund during the pendency of the action. The court's valuation and division of the pension fund assumed this repayment by Paul. In conjunction with this order, the court also directed that if this repayment should be accomplished by the company paying Paul a bonus, such bonus would not be considered a change in circumstances for purposes of a modification of support or maintenance. Michelle contends this ruling is error. We disagree.

Sometimes an asset can be used for either property division or support/maintenance purposes. *See Johnson v. Johnson,* 78 Wis. 2d 137, 143, 254 N.W.2d 198, 201 (1977); *Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 479, 377 N.W.2d 190, 194 (Ct. App. 1985). Such an asset cannot be utilized for both purposes, however. *Overson,* 125 Wis. 2d at 20, 370 N.W.2d at 799. We view the trial court's treatment of a possible future bonus to Paul as in compliance with these rules. The marital estate had already been rendered whole by

virtue of the court's inclusion of this "loan" and Michelle had benefited thereby by receiving her one-half interest based upon this calculation. Utilization of an already divided property division asset for purposes of an increase in support or maintenance is improper, we conclude, under *Overson.*

### B. Miscellaneous Property Division Issues

Michelle also contends that the trial court erred by miscalculating the value of 173 shares of R. J. Schinner Company stock awarded to Paul. Expert testimony established that the stock ownership interest of Paul was $106,000. Paul owned 193 shares but the court determined that twenty shares gifted to Paul should be excluded from the marital estate. The trial court stated:

> The court hereby credits Paul with 193 shares of Schinner Company stock for $106,00., [sic] less twenty shares gifted at $549.22 per share for a total of $85,465.54.

Upon examination of the trial court's calculations, we conclude that a mathematical error was made. The proper value of the R. J. Schinner Company stock was $95,105.54—not $85,465.54—a difference of $9550.[10] Because an abuse of discretion occurs when the trial court makes an error in computation, *Vander*

---

[10]The source of the trial court's error is easy to trace. Paul requested that the stock value be reduced by capital gains tax in the amount of $9550. The trial court expressly rejected this request because Paul was not anticipating selling the stock. *See Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 480, 377 N.W.2d 190, 194–95 (Ct. App. 1985). Yet, the court inadvertently included this reduction in its decision.

*Perren v. Vander Perren,* 105 Wis. 2d 219, 227, 313 N.W.2d 813, 817 (1982), we modify this portion of the property division and resultant judgment to reflect the correct valuation of the R. J. Schinner Company stock.

Next, Michelle argues that the trial court erred by giving Paul a credit of $1161 representing one-half of the interest earned on an account maintained for the benefit of the parties. At the time the divorce proceeding was commenced, the parties had contracted for the construction of a new home. The house was subsequently sold and the proceeds placed in an interest-bearing account. The accumulated interest at the time of the trial totaled $2322.

During the pendency of the action, Paul agreed that this fund could be turned over to Michelle. In return, Michelle agreed not to pursue contempt proceedings which would likely have resulted in Paul being jailed.[11] The court indicated, however, that this fund would again be addressed in the final property division.

The judgment awarded this asset to Michelle as part of her one-half of the property division. Inexplicably, however, the trial court went on to negative one-half of the accrued interest ($1161) from Paul's side of the property division ledger. This had the effect of reducing the net balancing payment owed by Paul to Michelle by this amount. Since the entire fund (princi-

---

[11]During the pendency of the action, Paul continually acted in defiance of court orders. Paul's dilatory conduct included failure to place bonus moneys in an escrow account, depletion of marital assets, failure to pay Michelle certain sums of money and failure to produce financial records.

pal and interest) had already been divided, Michelle was charged twice for this item. We modify this portion of the property division and resultant judgment accordingly.

Next, Michelle contends that the trial court erred by treating a loan owed to Paul by his brother as an "account receivable" and awarding each party a one-half interest in this asset. Michelle argues that the court should have ordered Paul to replenish the marital estate for the loan and then credited her share of the marital estate with one-half of the loan.

However, the evidence was vague and uncertain as to the actual amount due and owing. While Michelle is perhaps correct that this uncertainty is due to Paul's deceit and evasiveness, it does not serve to eliminate the evidentiary vacuum facing the trial court on this question. The evidence established the asset's existence, but not its value.[12] We conclude the trial court's method for dividing this asset was the only appropriate option available.

## CHILD SUPPORT AND MAINTENANCE

Michelle was awarded child support of $1000 per month and maintenance of $500 per month for forty-eight months. She challenges these awards on a number of fronts. One, which is common to both, contends that the court erred in failing to consider whether Paul's salary bonuses should be considered as

---

[12]Michelle contends that the trial court contributed to this dilemma by quashing a subpoena to the brother. She may well be correct. But this particular action of the court is not asserted as error on appeal.

part of his income stream for purposes of computing the support and maintenance awards. We agree.

As noted earlier, Paul regularly received bonuses in addition to his base salary. Evidence at trial revealed the following breakdown between Paul's base salary and bonuses during the five years previous to trial:[13]

| Year | Base Salary | Bonus | Total |
|------|-------------|-------|-------|
| 1985 | $50,000 | $127,000 | $177,000 |
| 1984 | 35,000 | 25,000 | 60,000 |
| 1983 | 35,000 | 13,750 | 48,750 |
| 1982 | 35,000 | 55,000 | 90,000 |
| 1981 | 24,000 | 51,660 | 76,660 |

The trial court's only statement as to Paul's income was: "In view of the financial problems and plights of Paul at this time, and based upon the salary he has indicated as the guaranteed salary in his trial brief ... ." The trial brief represented Paul's "guaranteed" salary to be $50,000 per year.[14]

The issue here is not the propriety of the trial court's support and maintenance awards assuming the bonuses are not considered. Rather, the issue is whether the trial court addressed whether Paul's bonuses should be considered. Michelle requested that support and maintenance be fixed based upon consid-

[13]These figures are based on the company's fiscal year ending March 31. Therefore, they vary from the calendar income figures stating Paul's gross income.

[14]We agree with Michelle that the trial court never expressly found Paul's salary to be $50,000 per year. Even if it had, the propriety of resting such a finding upon representations in a trial brief, as opposed to the evidence, must be questioned. We need not address this issue in light of our reversal of the support and maintenance award on other grounds.

erations of Paul's base *and* bonus salary. Sources of income, ordinary and extraordinary, are to be considered when setting child support. *O'Brien v. Freiley,* 130 Wis. 2d 174, 183, 387 N.W.2d 85, 89 (Ct. App. 1986). The same holds true for maintenance. *See Kastelic v. Kastelic,* 119 Wis. 2d 280, 285–86, 350 N.W.2d 714, 717 (Ct. App. 1984).

██

This is not a case of the trial court abusing its expressed discretion; rather, it is a case of the court failing to exercise discretion in a necessary area. The court clearly indicated what it considered Paul's salary to be. But the court did not indicate why the most significant portion of Paul's earnings, well documented over the five years previous to the trial, were to be ignored. A failure to exercise discretion constitutes an abuse of discretion. *Wisconsin Pub. Serv. Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

We have independently searched this record to determine whether it provides a basis for the trial court's silence in this matter. *See State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). We have not discovered any express indication that the payment of bonuses would cease.

The record does reveal that Paul indicated to Michelle when the action was commenced in 1983 that no further bonuses would be paid. However, this did not prove to be the case. Bonuses continued during 1984 and 1985. This history supports, rather than discredits, Michelle's request that the bonuses should have been considered in the fixing of support and maintenance awards.

The evidence also reveals likely collaboration between Paul and his father, the principal owner of R.

J. Schinner Company, to "camouflage" bonus payments as repayments for "loans" or "advances" to Paul, or otherwise to conceal Paul's true income status. The trial court may have concluded that this constituted evidence that bonuses would no longer be paid. We conclude, however, that this is not an acceptable reason for ignoring these payments. Rather, such an unfortunate situation calls upon the court to utilize its creative talents to monitor and control such deceptive tactics.[15]

We reverse the maintenance and support orders of the trial court and remand for the court to reconsider the support and maintenance issues in light of Paul's bonus history or to explain why the evidence warrants ignoring this payment history.

Before leaving these issues, we make an additional observation which reveals further trial court error on the maintenance question. In its decision, the court stated that Michelle was requesting $750 per month for four years. This is incorrect. Michelle requested long-term maintenance: $4800 per month for four years, followed by $750 per month for such period of time as necessary for her to become established in the job market.

Noting the difference between what the trial court ordered ($500 per month) and what the court erroneously perceived to be Michelle's demand ($750 per month), the court may have believed that it was awarding Michelle most of what she requested. The

---

[15]Setting maintenance at a percentage of the bonus payment is one alternative, a practice expressly approved in *Poindexter v. Poindexter,* 142 Wis. 2d 517, 530-31, 419 N.W.2d 223, 228-29 (1988).

remand on this issue will permit the court to reevaluate maintenance in light of Michelle's true request.[16]

Finally, Michelle argues that the trial court erred in failing to fix the amount of arrearage under the temporary family support order. We agree. Paul conceded at trial that the amount of the arrearage owed was $500. The judgment provided: "The arrearage of record as found above is to be paid by the respondent forthwith." However, the judgment fails to fix the amount of the arrearage. We modify the judgment to reflect that the arrearage amount is $500.

## CONCLUSION

We affirm the trial court's division of Paul's interest in the R. J. Schinner Company pension fund. We affirm the court's division of the loan by Paul to his brother. We affirm the order that any bonus payment to Paul by the company as payment for the $48,000 debt is not to be considered a change in circumstances for purposes of a support or maintenance modification.

We reverse the trial court's support and maintenance awards and remand for further proceedings consistent with this opinion.

---

[16]The remand proceedings will also afford the trial court an opportunity to examine the maintenance issue in light of the Wisconsin Supreme Court's decision in *LaRocque v. LaRocque,* 139 Wis. 2d 23, 406 N.W.2d 736 (1987), an opinion not yet released at the time of the trial court proceedings in this case.

Based upon our holding that the court erred in failing to assess the impact of Paul's bonuses, and the court's incorrect statement of Michelle's maintenance demand, we are not required to address the remainder of Michelle's challenges to the support and maintenance orders.

We modify the judgment and resultant property division to reflect the correct valuation of the R. J. Schinner Company stock at $95,105.54 and to eliminate the $1161 interest credit to Paul. We also modify the judgment to provide that the arrearage under the temporary family support order is $500. These portions of the judgment are then affirmed as modified.

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part, modified in part and affirmed as modified, reversed in part and cause remanded.