Patricia CAVEY, Plaintiff-Appellant,

v.

James A. WALRATH, as legal custodian for the Legal
Aid Society of Milwaukee, Inc., Defendant-
Respondent,

v.

Jane DOE, Intervenor.

Court of Appeals

*No. 98–0072. Submitted on briefs May 11, 1999.—Decided
June 29, 1999.*

(Also reported in 598 N.W.2d 240.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *De Vonna Joy* of *Whyte Hirschboeck Dudek S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David A. Loeffler* of *Krukowski & Costello, S.C.*, of Milwaukee.

Amicus curiae brief was filed by *Katherine L. Charlton* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer* of Milwaukee for The Metropolitan Milwaukee Fair Housing Council, Inc.

Before Fine, Schudson and Curley, JJ.

FINE, J.   Patricia Cavey, a former employee of the Legal Aid Society of Milwaukee, Inc., brought this mandamus action under Wisconsin's Public Records Law, §§ 19.31 to 19.37, STATS., seeking the following records kept by the Legal Aid Society for the years 1994

to 1996: Legal Aid Society payroll records, minutes of the Society's board of directors meetings, and contracts between the Legal Aid Society and Milwaukee County relating to the Society's providing guardian *ad litem* services to the County. The trial court granted summary judgment to the Society, dismissing Cavey's suit, but, as discussed below, also ruled in Cavey's favor on two points, and declined to rule on another. Cavey appeals. We reverse.

The Public Records Law gives the public access to public records. A "record" is defined as, *inter alia*, "any material on which written . . . information is recorded or preserved . . ., which has been created or is being kept by an authority." Section 19.32(2), STATS.[1] An "authority" includes "a nonprofit corporation which receives more than 50% of its funds from a county . . . and which provides services related to public health or safety to the county." Section 19.32(1), STATS.[2] There is no dispute but that the Legal Aid Society "provides

---

[1] Section 19.32(2), STATS., reads in full:

"Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks. "Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

[2] Section 19.32(1), STATS., reads in full:

services" to Milwaukee County "related to public health or safety." The trial court found that the Legal Aid Society received more than fifty percent of its funds from Milwaukee County during the relevant years if funds that the County gave to the Society for its guardian *ad litem* program pursuant to a state-reimbursement program were included, but that the Society did not exceed this fifty-percent threshold if those reimbursed funds were not included. The trial court decided not to count the reimbursed funds, ruling that "the phrase 'receives more than 50% of its funds from a county or municipality,' is limited to those funds raised by the property tax levy." Accordingly, it determined that the Legal Aid Society was not an "authority" as defined by § 19.32(1), STATS.

As noted above, the trial court also ruled in Cavey's favor on two points. First, the trial court wrote in its order that: "assuming that at least 50% of [the Legal Aid Society's] budget comes from County funds such that there was a right of public access to the requested [payroll] records, when the balancing test of the right of public access against the right of nondisclosure is applied to the payroll records requested, the public's interest in disclosure outweighs the interest of

"Authority" means any of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order; a governmental or quasi-governmental corporation except for the Bradley center sports and entertainment corporation; a local exposition district under subch. II of ch. 229; any court of law; the assembly or senate; a nonprofit corporation which receives more than 50% of its funds from a county or a municipality, as defined in s. 59.001 (3), and which provides services related to public health or safety to the county or municipality; a nonprofit corporation operating the Olympic ice training center under s. 42.11 (3); or a formally constituted subunit of any of the foregoing.

nondisclosure expressed by" the Legal Aid Society.[3] The Society does not dispute this determination. Second, the trial court also determined that "the contracts between [the Legal Aid Society] and Milwaukee County are public records." The Society also does not dispute this determination. The trial court decided not to rule whether the public was entitled to have access to the minutes of the Society's board of directors meetings, "absent an *in camera* inspection." Neither party disputes this decision.

Neither party contests the trial court's findings of fact. Although this is a mandamus action brought pursuant to § 19.37, STATS., and whether to issue a writ of mandamus is vested in the trial court's discretion, a court erroneously exercises its discretion when its decision is based on an "erroneous view of the law." *State ex rel. Lank v. Rzentkowski*, 141 Wis. 2d 846, 851, 416 N.W.2d 635, 636 (Ct. App. 1987). The only issue presented here is one of law: whether money paid to the Legal Aid Society by Milwaukee County that is derived from sources other than the property tax levy is excluded from the fifty-percent threshold. This requires us to interpret and apply the relevant stat-

---

[3] "[T]he right to inspect public documents and records" is "not absolute," and competing interests "must be balanced against [each] other in determining whether to permit inspection." *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 681, 137 N.W.2d 470, 474 (1965) (common-law principles preserved by the public records law), *modified on other grounds*, 139 N.W.2d 241 (1966). "The interests to be balanced are, on the one hand, the 'harm to the public interest by disclosure,' and, on the other hand, 'the public interest in inspection.' " *Journal/Sentinel, Inc. v. School Board*, 186 Wis. 2d 443, 457, 521 N.W.2d 165, 171 (Ct. App. 1994).

utes, which we do *de novo*. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–365, 560 N.W.2d 315, 317 (Ct. App. 1997).[4]

---

[4] The Legal Aid Society also argues that Cavey, who is involved in collateral litigation with the Society over her dismissal as an employee, is thus prevented from seeking under the Public Records Law documents that may be relevant in that collateral litigation. Although the Society did not cross-appeal from the trial court's order, it may, nevertheless, raise this issue because, if the Society is correct, we would affirm that order. *See State v. Alles*, 106 Wis. 2d 368, 390–391, 316 N.W.2d 378, 388 (1982). The Society, however, is not correct. With exceptions not relevant, under the Public Records Law, "any requester has a right to inspect any record," § 19.35(1)(a), STATS., and a " '[r]equester' means *any* person who requests inspection or copies of a record," § 19.32(3), STATS. (emphasis added). The legislature did not exclude from the all-inclusive population encompassed by the phrase "any person" those persons involved in litigation with the authority from which they seek public records. *See State ex rel. Lank v. Rzentkowski*, 141 Wis. 2d 846, 853, 416 N.W.2d 635, 637 (Ct. App. 1987). *Law Offices of William A. Pangman & Assocs. v. Zellmer*, 163 Wis. 2d 1070, 473 N.W.2d 538 (Ct. App. 1991), relied on by the Legal Aid Society, is not to the contrary. Aware of our prior holding in *State ex rel. Lank, see Pangman*, 163 Wis. 2d at 1079 n.3, 473 N.W.2d at 542 n.3 (*Lank* cited for proposition that the law presumes that the public has access to public records), we upheld the denial of access to certain law enforcement personnel records not because, as the Society suggests, those seeking access to those records might use them in litigation, but, rather, because in the context of that case, the requisite balancing of the public's interest in disclosure versus the public's interest in non-disclosure tipped in favor of non-disclosure. *See Pangman*, 163 Wis. 2d at 1082–1083, 1086–1087, 1089–1090, 473 N.W.2d at 543, 545, 546. As noted, the trial court here decided the balancing-of-the-interests test in favor of disclosing the personnel records sought by Cavey.

"Absent a constitutional infirmity, courts must apply statutes as they are written, unless to do so would lead to an absurd result that did not reflect the legislature's intent." *State v. Young*, 180 Wis. 2d 700, 704, 511 N.W.2d 309, 311 (Ct. App. 1993), *aff'd*, 191 Wis. 2d 393, 528 N.W.2d 417 (1995); *see also DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982) ("When statutory language is clear and unambiguous, no judicial rule of construction is permitted, and the court must implement the express intention of the legislature by giving the language its ordinary and accepted meaning."). Stated another way, we may neither add nor subtract words to or from a statute. *See Fond du Lac County v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818, 821 (Ct. App. 1989). On its surface, the statute's definition of "authority" supports Cavey's argument, even as recast for her by the Legal Aid Society's brief on appeal:

> [A]ccording to Cavey, if this Court simply adds up the checks, drawn on the Milwaukee County general treasury, with [the Legal Aid Society] as payee, in each of the relevant years, and then calculates the ratio between that number, and [the Legal Aid Society's] audited statements of total revenues received for each year (as well as [some additional] numbers set out [in an exhibit submitted to the trial court by the Society]), the contribution of Milwaukee County to [the Society's] aggregate funds exceeds 50% in each year. So, as Attorney Cavey would have it, [the Society] is an "authority" within the meaning of Section 19.32(1), and must give up the salary/benefit information specific to identifiable individuals employed by [the Society] in each of those years.

(Underlining in original; record-reference footnote omitted.) The Legal Aid Society concedes that what it calls "these bold assertions" are "literally true enough," but contends that there is more to the story, and points to § 20.625(1)(e), STATS., and § 758.19(6)(a), (b) & (c), STATS., as transmuting what it would contend to be the fool's gold of Cavey's "literally true" arguments into a leadenly false syllogism. Statutes relating to the same subject must be analyzed together. *See State v. Wagner*, 136 Wis. 2d 1, 5, 400 N.W.2d 519, 521 (Ct. App. 1986). Accordingly, we turn to the statutes cited by the Society to see if its promise of transmutation is fulfilled. It is not.

Section 20.625(1)(e), STATS., provides:

> There is appropriated to the director of state courts for the following programs:
> **(1)** COURT OPERATIONS.
>
> . . . .
> (e) *Guardian ad litem costs.* The amounts in the schedule to pay the counties for guardian ad litem costs under s. 758.19 (6).

Section 758.19(6), STATS., provides, as relevant here:

> (a) In this subsection, "guardian ad litem costs" means the costs of guardian ad litem compensation that a county incurs under ch. 48, 55, 767, 880 or 938, that the county has final legal responsibility to pay or that the county is unable to recover from another person and that does not exceed the per hour rate established for time spent in court by private attorneys under s. 977.08 (4m) (b).
> (b) From the appropriation under s. 20.625 (1) (e), the director of state courts, beginning on July 1, 1995, shall annually on July 1 pay the county's share, as determined under par. (c), of the total appropriation under s. 20.625 (1) (e) to defray a

county's guardian ad litem costs. The payment shall be made only to those counties that submit the information required under par. (d) by the preceding May 15.[5]

Sections 20.625(1)(e) and 758.19(6)(a), (b), & (c) STATS., merely recognize a county's obligation to pay for guardian *ad litem* services, *see* §§ 48.235(8), 55.06(6) (incorporating provisions of § 757.48, STATS.), 767.045(6), 880.33(2)(a)3, 880.331(8), 938.235(8), & 938.996, STATS., and provide for state-reimbursement

---

[5] Section 758.19(6)(c), STATS., provides:

1. In this paragraph:

a. "Court support services fee" means the fee under s. 814.634.

b. "Judicial need" means the need for a circuit judge, calculated under the weighted caseload formula, based on case filings in the previous calendar year for those types of cases which the director of state courts determines are likely to involve significant guardian ad litem costs.

c. "Weighted caseload formula" means the formula utilized by the director of state courts to assist in determining the comparative need for circuit court judges in this state, based on the number of cases filed in a given year and the judicial time needed to process the cases.

2. The amount paid to each county under par. (b) shall be the sum of the following amounts:

a. The amount determined by dividing the number of circuit court branches in the county by the total number of circuit court branches in the state and multiplying that result by one-third of the total amount to be paid under par. (b).

b. The amount determined by dividing the judicial need for the county by the total judicial need for all counties in this state and multiplying that result by one-third of the total amount to be paid under par. (b).

c. The amount determined by dividing the amount of court support services fees charged and collected in the county in the previous calendar year by the total amount of court support services fees charged and collected in the state in the previous calendar year and multiplying that result by one-third of the total amount to be paid under par. (b).

of these costs.[6] They do not purport to modify the definition of "authority" in § 19.32(1), STATS., nor do they do so. Moreover, there is nothing in the legislative history of this reimbursement mechanism, first enacted by 1993 Wis. Act. 16, §§ 529 & 3572 and designed to alleviate the burden on the counties for state-mandated services, that indicates *any* legislative intent to modify the clear language declaring when a nonprofit corporation is an "authority" for purposes of the Public Records Law.

Openness in government is the overarching policy of Wisconsin's Public Records Law:

> **Declaration of policy.** In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss.

---

[6] Section 758.19(6)(d), STATS., referenced in § 758.19(6)(b), also recognizes Milwaukee County's obligation to pay for guardian *ad litem* costs, and provides:

> Annually, no later than May 15, each county shall submit to the director of state courts, in a format that the director of state courts establishes, all of the following:
>
> 1. The total cost of guardian ad litem compensation that the county incurred under chs. 48, 55, 767, 880 and 938 in the previous calendar year.
>
> 2. The total guardian ad litem compensation that the county initially paid under chs. 48, 55, 767, 880 and 938 and that was recovered in the previous calendar year by the county from another responsible person.

19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Section 19.31, STATS.[7] *See also State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 433, 477 N.W.2d 608, 609 (1991) ("There is a presumption that the public has the right to inspect public records unless an exception is found."). "Taxpayers of a community have the right to know how and why their money is spent." *Journal/Sentinel, Inc. v. School Board*, 186 Wis. 2d 443, 459, 521 N.W.2d 165, 172 (Ct. App. 1994). The key is not where the money in the county coffers originates, but how and why it is spent. Thus, if a county paid individual lawyers appointed to provide guardian *ad litem* services, the county's records relating to those appointments would be subject to public access because every county is an "authority" under § 19.32(1), STATS. This would be true irrespective of where the county received the money from which it made those payments—county property tax, money collected from taxpayers by the State and given to the county, money collected from taxpayers by the United States and provided to the county under some federal grant, or money donated to the county by a private philanthropist. The same reasoning applies in determining whether the Legal Aid Society is an "authority."

■ As noted, § 19.35(1)(a), STATS., states the general rule: "Except as otherwise provided by law, any requester has a right to inspect any record." As rele-

---

[7] The Wisconsin Statutes spell the word "employee" as "employe."

vant here, a " '[r]equester' means any person who requests inspection or copies of a record." Section 19.32(3), STATS.[8] Thus, any person (other than those specifically excepted from the definition of "requester") has a right to inspect any record (subject to the common-law "balancing" discussed in footnote 3, and other provisions of law that are not material here) of a nonprofit corporation if that nonprofit corporation has, in essence, become an arm of a county because it both "provides services related to public health or safety" to the county, and "receives more than 50% of its funds" from that county. None of the statutes to which the Legal Aid Society has referred us, or any statute we have discovered, alters this calculus.[9] Under the trial court's interpretation, § 19.32(1), STATS., would define "authority" as: "a nonprofit corporation which receives

---

[8] Section 19.32(3), STATS., reads in full:

> "Requester" means any person who requests inspection or copies of a record, except a committed or incarcerated person, unless the person requests inspection or copies of a record that contains specific references to that person or his or her minor children for whom he or she has not been denied physical placement under ch. 767, and the record is otherwise accessible to the person by law.

[9] The Legal Aid Society concedes that it is not "claiming that enactment of Section 20.625(1)(e) and Section 758.19(6)(a), (b) and (c) represents a legislatively conscious amendment of the Section 19.32(1) definition of 'authority.' " Nevertheless, it would have us, apparently, either divine a *sub*conscious intent or, at the very least, interpret the statute as it suggests even though the legislature did not, consciously or subconsciously, intend to change the fifty-percent formula at all. As noted in the main body of this opinion, absent a constitutional infirmity, the task of all courts is to apply the clear language of statutes as that language reads—neither adding nor subtracting words or meaning. *See Fond du Lac County v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818, 821 (Ct. App. 1989).

more than 50% of its funds from a county <u>property taxes</u> . . . and which provides services related to public health or safety to the county." The trial court's deletion is indicated by interlineation; its addition by underlining. Neither the trial court nor we, however, may either add or subtract words to or from a statute. *See Fond du Lac County*, 149 Wis. 2d at 334, 440 N.W.2d at 821. We reverse the trial court's order in part, and direct that the writ issue in connection with Cavey's request for the Legal Aid Society's personnel records and for the contracts between Milwaukee County and the Society. *See State ex rel. Lank*, 141 Wis. 2d at 849 n.2, 416 N.W.2d at 635 n.2 (appellate court direction that writ issue is appropriate when "no other issues remain to be tried between the parties").[10] We remand for further proceedings in connection with the minutes of the Society's board of directors meetings.[11]

---

[10] It may very well be that § 19.36(3), STATS., not discussed by the parties, also applies to the documents sought by Cavey. Section 19.36(3), provides that "[e]ach authority shall make available for inspection and copying . . . any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority." Under this section, documents prepared by an entity contracting with an "authority" are subject to disclosure under the Public Records Law even though the documents are neither prepared directly by the authority nor kept in its custody. *See Journal/Sentinel, Inc.*, 186 Wis. 2d at 453, 521 N.W.2d at 170.

[11] We reject the Legal Aid Society's argument, as phrased in their brief on this appeal, that we should "go easy on nonprofits in terms of coverage of the Public Records" Law so as not to discourage them from providing services to the government. That is a policy argument that must be made to the legislature, not us. *See Journal/Sentinel, Inc.*, 186 Wis. 2d at 457–458, 521 N.W.2d at 172 (rejecting argument that inasmuch as settlement

*By the Court.*—Order reversed in part and cause remanded.

of disputes was in the public interest, settlement agreements should be cloaked from public scrutiny because that "might help expedite the settlement process").

The *amicus* brief submitted by the Metropolitan Milwaukee Fair Housing Council contends that nonprofit corporations should not be subject to the Public Records Law because forcing them to comply with the law "can be unreasonably burdensome." (Uppercasing omitted.) That also is a matter for the legislature, not us.