**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 23, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1891**

Cir. Ct. No. **2017CV228**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STEPHEN SULLIVAN AND TERESA SULLIVAN,

  PLAINTIFFS-RESPONDENTS,

 V.

LUCKY 239, LLC, EDWARD M. CARLIN, NANCY R. CARLIN, MARK H. PEACOCK, MARINA H. PEACOCK, PAUL HUBACHER, UNKNOWN SPOUSE OF PAUL HUBACHER, RYAN A. HOPKINS, MICHELLE N. HOPKINS A/K/A MICHELLE BEAUVAIS, RICHARD BEAUVAIS, THERESA LYNN BEAUVAIS, DOMINIC RIO, BRENDA L. RIO, WINGS FINANCIAL CREDIT UNION, WELLS FARGO HOME MORTGAGE, INC., HIAWATHA NATIONAL BANK, MIDWESTONE BANK, WESTCONSIN CREDIT UNION AND ALL OTHER PERSONS CLAIMING RIGHT, TITLE OR INTEREST IN OR LIEN UPON ANY OF THE LANDS DESCRIBED IN THIS ACTION,

  DEFENDANTS,

ROGER R. SHAIDE, ROXANNE SHAIDE, MIKEL R. HUPPERT AND KELLY A. HUPPERT,

  DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Roger Shaide, Roxanne Shaide, Mikel Huppert, and Kelly Huppert (collectively, "the Shaides") appeal an order in which the circuit court granted Steven and Teresa Sullivan's motion for reconsideration of a prior order that determined the parties' respective rights to a disputed area of waterfront property. The Shaides argue the court erroneously exercised its discretion by reconsidering its prior determination of the location of the ordinary high-water mark ("OHWM") in the disputed area. The Shaides also argue that the court erred by reconsidering its prior decision to determine the parties' respective interests in the disputed area by apportionment. For the reasons explained below, we conclude the court did not erroneously exercise its discretion by granting the Sullivans' motion for reconsideration. We therefore affirm.

## BACKGROUND

¶2    The Shaides, collectively with a number of other parties, own waterfront real estate on the east side of Bone Lake in Polk County. In 2011, the Sullivans purchased a parcel of land located immediately south of the Shaides' lot. Thus, the northern boundary of the Sullivans' property is the southern boundary of the Shaides' property.

¶3    The dispute in this appeal involves the location of the western portion of the common boundary line between the Sullivan and Shaide

properties—i.e., the portion of the boundary line closest to the lake.[1] The location of the western portion of the boundary line—along with the location of the OHWM—determines the parties' respective rights to a peninsula of land extending into the lake (hereinafter, "the disputed area"). The Shaides assert that they began using the disputed area in 2003, that the disputed area was marshy and wet at that time, and that the area still gets wet "after a rain." The Sullivans purchased their property in 2011, and the Sullivans then began filling in the disputed area and cutting down trees and weeds, which led to a dispute between the parties regarding their respective ownership of, and rights to use, the disputed area.

¶4     The Sullivans filed the instant lawsuit against the Shaides and other co-owners of the Shaide property in August 2017, regarding the ownership and use of the disputed area. The Sullivans' complaint sought a declaration of interest in real property under WIS. STAT. ch. 841 (2019-20),[2] and it also asserted causes of action for trespass and for interference with an interest in real property under WIS. STAT. § 844.01. The circuit court held a bench trial on the Sullivans' claims in February 2019.

¶5     At trial, the Sullivans relied on the testimony of Douglas Crane, a licensed professional land surveyor. Crane opined that the common boundary line

---

[1] Although the issue was disputed at trial, the Shaides concede on appeal that the eastern portion of the common boundary line extends to a location designated as "Point 2" on the various survey maps. The issue on appeal is how to extend the boundary line beyond Point 2 to the west—i.e., toward the lake. It is undisputed that the parties' deeds are ambiguous as to where the boundary line is located west of Point 2.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

between the parties' properties should extend straight west from Point 2 to the OHWM of Bone Lake. Conversely, the Shaides' expert, licensed professional land surveyor Thomas Swenson, opined that the common boundary should extend southwest to the OHWM at an angle.

¶6      The location of the OHWM was also disputed at trial. Relying on *Diana Shooting Club v. Husting*, 156 Wis. 261, 145 N.W. 816 (1914), Crane testified that an OHWM is "a point on the shore where the continuous presence of water shows an erosion line, a change in vegetation, or other distinguishable characteristics that form a distinct line that's easily recognizable." Applying that definition, Crane located the OHWM in the disputed area based on his personal observation of "a distinguished mark in an erosion line and other supporting characteristics."

¶7      Swenson testified that in 2009, he contacted Dan Harrington, a water management specialist at the Wisconsin Department of Natural Resources ("DNR"), to assist in determining the OHWM in the disputed area. Swenson and Harrington met at the site in May 2009. According to Swenson, it was difficult to determine the OHWM in the disputed area because the area is marshy with "a lot of vegetation." As a result, Harrington identified what he deemed to be the OHWM at two locations outside the disputed area, based on his observation of an "eroding shelf" at those locations. Harrington determined that those two locations were "almost identical in elevation[]." Swenson then marked points with the same elevation within the disputed area and used those points to determine the location of the OHWM.

¶8      Harrington testified that he was never asked to make a formal determination under WIS. STAT. § 227.41 regarding the location of the OHWM in

the disputed area; he was merely asked to provide his "opinion." He did not believe that his opinion would be used to determine "riparian zones" or "riparian rights." Harrington also conceded that after Swenson determined the OHWM in the disputed area based on the elevation from the two sites Harrington had identified, Harrington never returned to the site to review Swenson's "elevation tracing."

¶9      In contrast, Crane returned to the site in November 2018 and marked the location of Swenson's OHWM at seven points. Crane's photographs of those markers were introduced into evidence at trial. Based on his observations, Crane opined that "there is no distinctive mark along any of these lines. There is no sign of erosion, change in vegeta[t]ion or any other easily recognized characteristic on any of the OHWM lines as mapped by Swenson." Crane continued, "If Swenson's mapping is an accurate location of the OHWM, I believe that we should see something that fits the definition of the OHWM at some of the points along his OHWM." Crane's photographs showed no distinction between the areas identified as "upland" and those identified as "lakebed" on either side of Swenson's OHWM. Crane therefore opined that Swenson's determination of the OHWM based on elevation "completely defies 'common sense.'"

¶10     The circuit court issued an oral ruling on April 23, 2019. However, due to some confusion about the terms of the court's ruling, it did not issue a written order until February 3, 2020. The February 3 order adopted Swenson's determination as to the location of the OHWM. It further provided that the northern boundary of the Sullivan property ran west from Point 2 for approximately thirty feet until it met Swenson's OHWM. The order stated that there was "usable land" beyond the OHWM, and that "apportionment" was the

proper method for dividing that land. The order then stated that the usable land between the OHWM and the shoreline should be apportioned so as to divide the total navigable waterfront "in proportion to the length of each party's actual shoreline." This apportionment resulted in the Sullivans receiving 81.22 feet of shoreline and the Shaides receiving 87.98 feet of shoreline. It also resulted in the Shaides receiving exclusive use of the majority of the disputed area.

¶11 The Sullivans moved for reconsideration of the circuit court's February 3 order, raising two issues. First, they argued the court had applied the incorrect legal standard when it adopted Swenson's opinion as to the location of the OHWM, rather than Crane's opinion. Second, the Sullivans argued that the court erroneously relied on the legal standards applicable to riparian zones when dividing the disputed area, instead of applying the rules applicable to boundary lines.

¶12 After considering briefs filed by the parties, the circuit court granted the Sullivans' motion for reconsideration on both issues in an oral ruling. The court acknowledged that in order to prevail on their motion, the Sullivans needed to establish "a manifest error of law or fact" in the court's prior decision. The court then concluded that it had not properly applied the relevant legal standard to the facts in its original decision when it accepted Swenson's opinion as to the location of the OHWM. The court noted that when it initially adopted Swenson's opinion, it had relied on the fact that Swenson's method of determining the OHWM—namely, transferring the elevation of the OHWM at one location to another location—was "an accepted practice in the surveying world." On reconsideration, however, the court recognized that Swenson's OHWM determination did not adequately consider on-the-ground physical attributes, as required by *Diana Shooting Club*.

¶13    The circuit court also emphasized that neither Swenson nor Harrington had verified whether Swenson's OHWM corresponded to the type of physical evidence on the ground that would typically be associated with the location of an OHWM. Harrington "did not return back to the scene and confirm the tracing." Swenson "did not independently verify that the line that he had drawn for the [OHWM] had a distinct vegetation change or really any change." In addition, Swenson "did not go back and try and reconcile any aerial photos with the tracing that he did."

¶14    The circuit court noted that unlike Swenson and Harrington, Crane had returned to the site, had mapped Swenson's OHWM on the ground, and had taken photographs showing that "there are no distinguishing characteristics on one side or the other of the Swenson [OHWM]." Crane observed that the area Swenson had identified as lakebed was "not wet" and included "trees and other nonaquatic vegetation." Conversely, the court noted that one of the photographs admitted at trial—Exhibit 25—"clearly showed a distinct mark on the shoreline and the line of erosion that is consistent with … Crane's approximate [OHWM]." The court also observed that Crane's OHWM was consistent with aerial photographs of Bone Lake dating back to 1938. For all of these reasons, the court concluded that its original decision adopting Swenson's OHWM did not properly apply the facts to the legal standard set forth in *Diana Shooting Club*.

¶15    The circuit court next addressed the location of the parties' common boundary line west of Point 2. In its initial decision, the court had ruled that the boundary ran west from Point 2 for approximately thirty feet until it met Swenson's OHWM. The court then apportioned the "usable land" beyond the OHWM between the parties. On reconsideration, the court acknowledged that it had "appl[ied] the riparian zone standards" when apportioning the useable land

beyond Swenson's OHWM. The court recognized, however, that after adopting Crane's OHWM, which was generally located farther to the west than Swenson's, the court needed to determine how to extend the common boundary line to the OHWM, rather than apportioning riparian rights beyond the OHWM. Based on evidence introduced at trial, the court concluded that the boundary line should be extended to the west in a straight line from Point 2 to Crane's OHWM—i.e., to the shoreline of the lake.

¶16 The circuit court subsequently entered a written order granting the Sullivans' reconsideration motion; adopting Crane's OHWM; setting forth the location of the boundary line between the parties properties; and declaring that the Sullivans owned and had the exclusive right to use the land south of that boundary line. This effectively resulted in the Sullivans receiving ownership of, and the exclusive right to use, the disputed area. The Shaides now appeal.

## DISCUSSION

¶17 We review a circuit court's decision on a motion for reconsideration using the erroneous exercise of discretion standard of review. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. Under that standard, we will affirm a discretionary decision as long as the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion. *Franke v. Franke*, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832. We generally look for reasons to sustain a circuit court's discretionary decisions. *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶30, 326 Wis. 2d 640, 785 N.W.2d 493.

¶18     In this case, the Sullivans moved for reconsideration under WIS. STAT. § 805.17(3), which provides that following a trial to the court, "[u]pon its own motion or the motion of a party made not later than 20 days after entry of judgment, the court may amend its findings or conclusions or make additional findings or conclusions and may amend the judgment accordingly."  To prevail on a motion for reconsideration under this subsection, a movant must either present newly discovered evidence or demonstrate that the circuit court's prior decision contained a manifest error of law or fact.  *See **Koepsell's***, 275 Wis. 2d 397, ¶44; *see also **Schinner v. Schinner***, 143 Wis. 2d 81, 92-93, 420 N.W.2d 381 (Ct. App. 1988) (applying the "manifest error" standard to a motion for reconsideration under § 805.17(3)).[3]

¶19     Mere disappointment of the losing party is not sufficient to demonstrate manifest error.  ***Koepsell's***, 275 Wis. 2d 397, ¶44.  Instead, a manifest

---

[3] The Sullivans argue that the "manifest error" standard set forth in ***Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.***, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853, does not apply to a motion for reconsideration filed under WIS. STAT. § 805.17(3).  In ***Schinner v. Schinner***, 143 Wis. 2d 81, 92-93, 420 N.W.2d 381 (Ct. App. 1988), however, this court held that a motion for reconsideration under § 805.17(3) requires the movant to show that the circuit court made a "manifest error" in its prior decision. Moreover, multiple Wisconsin practice guides have recognized that the "manifest error" standard set forth in ***Koepsell's*** applies when a party moves for reconsideration under § 805.17(3).  *See* ERIC L. ANDREWS ET AL., WISCONSIN TRIAL PRACTICE § 13.34 (4th ed. 2019); WISCONSIN CIVIL LITIGATION FORMS MANUAL § 44.1 (4th ed. 2018).  We therefore reject the Sullivans' argument that the "manifest error" standard is inapplicable here.

The Shaides, in turn, suggest that the Sullivans' motion for reconsideration was untimely under WIS. STAT. § 805.17(3) because it was not filed within twenty days after the circuit court made its original oral ruling following the bench trial.  However, § 805.17(3) requires a motion for reconsideration to be filed "not later than 20 days after entry of judgment."  Here, although the court issued its oral ruling following the bench trial on April 23, 2019, it did not enter a written order memorializing its oral ruling and disposing of the Sullivans' claims until February 3, 2020.  The Sullivans timely moved for reconsideration of that order on February 20, 2020.

error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (citation omitted). Stated differently, a manifest error is "that self-evident kind of error which results from ordinary human failings due to oversight, omission, or miscalculation … [and] which tends to immediately reveal itself as such to reasonable legal minds." *Schinner*, 143 Wis. 2d at 92-93.

¶20    Here, the circuit court implicitly determined in its oral ruling granting reconsideration that its original decision regarding the location of the OHWM was based on a manifest error of law—specifically, the court's failure to properly apply the legal standard from *Diana Shooting Club* to the facts of this case. We conclude the court did not erroneously exercise its discretion in that regard.

¶21    *Diana Shooting Club* held that an OHWM is "the point on the bank or shore up to which the presence and action of the water is so continuous as to leave a distinct mark either by erosion, destruction of terrestrial vegetation, or other easily recognized characteristic." *Diana Shooting Club*, 156 Wis. at 272. However, where conditions are such that it is impossible or difficult to determine the location of the OHWM at a particular location, "recourse may be had to other places on the bank or shore of the same stream or lake to determine whether a given stage of water is above or below [the] ordinary high-water mark." *Id.* Thus, where possible, *Diana Shooting Club* requires the OHWM to be determined based on physical evidence on the ground at the specific site in question. Only if such physical evidence is not present at a particular site may data from other locations be used to determine the OHWM.

¶22    As the Shaides correctly note, in *State v. Trudeau*, 139 Wis. 2d 91, 106-09, 408 N.W.2d 337 (1987), our supreme court concluded that a DNR

10

employee properly determined the OHWM at a particular site by transferring the elevation of the OHWM from a nearby location, as the OHWM could not be determined from the physical characteristics of the site itself. In its original decision, the circuit court focused on the fact that elevation transferring—which Swenson used to determined the OHWM in this case—is an "accepted practice in the surveying world." On reconsideration, however, the court recognized that it had erred by placing too much emphasis on the method Swenson used without adequately considering whether the physical evidence supported Swenson's use of that method and the result he obtained.

¶23    The circuit court emphasized on reconsideration that, consistent with *Diana Shooting Club*, Crane had based his determination of the OHWM on erosion marks and other supporting characteristics that he had observed in the disputed area. The court further noted that Crane's observations "were confirmed by Exhibit 25," one of the photographs admitted at trial, which "clearly showed a distinct mark on the shoreline and the line of erosion that is consistent with … Crane's approximate [OHWM]." In addition, the court observed that Crane's OHWM was consistent with aerial photographs of the shoreline dating back to 1938. Thus, the court found that Crane's determination of the OHWM complied with *Diana Shooting Club* because it was based on, and was consistent with, physical evidence at the site.

¶24    Conversely, the circuit court found that Swenson's OHWM was not supported by physical evidence in the disputed area. The court noted that neither Swenson nor Harrington had returned to the site to determine whether physical evidence in the disputed area supported Swenson's determination of the OHWM, nor did Swenson analyze whether his OHWM was consistent with the available aerial photographs. In contrast, the court observed that Crane returned to the site

and determined that Swenson's OHWM was inconsistent with the physical evidence on the ground. The court specifically cited Crane's photographs of Swenson's OHWM, which showed that there was no observable distinction between the "upland" areas on one side of Swenson's OHWM and the "lakebed" areas on the other side.

¶25 On this record, we cannot conclude that the circuit court erroneously exercised its discretion by reconsidering its earlier decision regarding the OHWM. The court reasonably determined on reconsideration that it had not properly applied the legal standard from *Diana Shooting Club* in its original decision because it had not given adequate weight to the physical evidence at the site when determining the location of the OHWM. Although the court did not expressly state in its oral ruling that it had made a "manifest error" of law or fact in its prior decision, it is clear the court implicitly determined that it made a manifest error of law by improperly applying the relevant legal standard.

¶26 The Shaides nevertheless argue that the circuit court erred by reconsidering its decision as to the OHWM because under WIS. STAT. § 236.025, a "DNR determination of the OHWM is controlling for survey purposes." The Shaides therefore suggest that the court was required to adopt Swenson's OHWM because it was based on Harrington's determination of the OHWM at nearby locations.

¶27 We reject this argument for three reasons. First, it is not clear that WIS. STAT. § 236.025 is applicable in this case. Section 236.025 sets forth the procedures that a professional land surveyor may use when determining the OHWM "[f]or purposes of ss. 236.15(1)(ag) and (d) and 236.20(2)(g)." Sec. 236.025(1). Sections 236.15(1)(ag) and (d) pertain to the surveying

12

requirements "[f]or every subdivision of land." Section 236.20, in turn, contains the requirements for "[a] final plat of subdivided land." This case does not involve the "subdivision" of land, as that term is used in WIS. STAT. ch. 236. *See* WIS. STAT. § 236.02(12). As such, it is not clear that § 236.025 is relevant to our analysis.

¶28    Second, even if WIS. STAT. § 236.025 is applicable in this case, the statute's plain language does not support the Shaides' assertion that a DNR determination of the OHWM is "controlling" for survey purposes. The statute provides that for purposes of the listed subsections,

> a professional land surveyor may do any of the following:
>
> (a)  Incorporate into a map, plat, or survey an [OHWM] that has been determined by the department of natural resources or otherwise determined pursuant to law.
>
> (b)  Approximate the [OHWM] and incorporate that mark into a map, plat, or survey.

Sec. 236.025(1).    This language unambiguously allows a surveyor to *either* incorporate an OHWM that has been determined by the DNR *or* approximate the OHWM.[4] Nothing in the plain language of § 236.025 requires a surveyor to adopt the DNR's OHWM determination.

---

[4] If a surveyor chooses to approximate the OHWM under WIS. STAT. § 236.025(1)(b), the location of the OHWM

> shall be the point on the bank of a navigable stream or on the shore of a lake up to which the presence and action of surface water is so continuous as to leave a distinctive mark by erosion, destruction of terrestrial vegetation, or other easily recognized characteristics. If the approximate location of the ordinary high water mark is difficult to determine, a professional land surveyor may consider other points on the bank or shore for purposes of approximating the location of the ordinary high water mark.

(continued)

13

¶29 Third, the DNR never made a formal determination of the OHWM in the disputed area. Harrington testified that he was never asked to make a formal determination under WIS. STAT. § 227.41 as to the location of the OHWM. He was merely asked to provide his "opinion." Moreover, Harrington explained that he identified the OHWM at two nearby points, and Swenson then used the elevation from those points to determine the OHWM in the disputed area. Thus, even if the Shaides were correct that the DNR's determination of the OHWM is "controlling" under WIS. STAT. § 236.025, in this case the DNR never made any determination of the OHWM in the disputed area.

¶30 The Shaides next argue that the circuit court erred by "reconsidering its determination of rights to [the disputed area] because [the Sullivans'] land ended at the [Swenson] OHWM and the rights beyond the OHWM should be apportioned between the two parcels." The Shaides concede, however, that this argument is contingent on us accepting their prior argument that the court erred by reconsidering its decision regarding the OHWM. We have already concluded that the court did not erroneously exercise its discretion by granting the Sullivans' motion for reconsideration as to the location of the OHWM and by adopting Crane's OHWM, rather than Swenson's. It is undisputed that if the court properly adopted Crane's OHWM, then it did not err by extending the parties' common boundary line west from Point 2 to Crane's OHWM, instead of apportioning the parties' riparian rights to the disputed area. The Shaides' argument that the court

Sec. 236.025(2). The parties agree that this standard for determining the OHWM is consistent with the standard set forth in *Diana Shooting Club v. Husting*, 156 Wis. 261, 145 N.W. 816 (1914).

14

erred by reconsidering its determination of the parties' rights to the disputed area therefore fails.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.